1
2
3
4
5
6
7
8

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

9

| | |
|---|---|
| RAFAEL VALTIERRA, ) | CIV-F-10-0849 AWI GSA |
| ) | |
| Plaintiff, ) | ORDER RE: MOTION TO DISMISS |
| ) | AND MOTION TO STRIKE |
| v. ) | |
| ) | |
| WELLS FARGO BANK, N.A., successor ) | |
| in interest to WACHOVIA and DOES 1 ) | |
| through 50, inclusive, ) | |
| ) | **(Docs. 12 and 13)** |
| Defendants. ) | |
| _____ ) | |

10
11
12
13
14
15
16

17        Defendant has filed motions to dismiss Plaintiff's first amended complaint for failure to

18   state a claim and to strike portions of the complaint.  Plaintiff opposes the motion to dismiss.

19   Based on the analysis contained herein, the motion to dismiss is granted with leave to amend.  As

20   the complaint is being dismissed, no consideration of the motion to strike is necessary.

21

22                                    **I. History**[1]

23        On June 21, 2006, Plaintiff Rafael Valtierra and his wife, Ofelia Valtierra, obtained a

24   $488,000 mortgage from World Savings Bank, FSB ("World Savings") which through a number

25   of corporate changes has become Defendant Wells Fargo Bank, N.A. ("Wells Fargo").  The loan

26   _____

27        [1]The factual history is provided for background; the assertions contained therein are not
     necessarily taken as adjudged to be true.  The legally relevant facts relied upon by the court are
28   discussed within the analysis.

was secured by a Deed of Trust against 1921 Katherine Court, Turlock, CA, which was recorded on July 5, 2006.  The Deed of Trust named Plaintiff and Ofelia Valtierra as trustors, World Savings as beneficiary, and third party Golden West Savings Association Services Company as trustee.  Plaintiff fell behind on payments, and a Notice of Default was recorded on August 3, 2009 by third party Cal-Western Reconveyance Corporation ("Cal-Western").  A Notice of Trustee Sale was recorded on November 5, 2009 setting a public auction for November 24, 2009; this document named Cal-Western as the trustee.  The sale took place on March 8, 2010.  Wells Fargo was the high bidder at $327,930.00; the outstanding amount Plaintiff owed on the mortgage had ballooned to $559,109.93.  A Trustee's Deed upon Sale was recorded on March 16, 2010, in which Cal-Western conveyed the property to Wells Fargo.  At an unspecified date, Wells Fargo sent Plaintiff written notice of a program whereby Plaintiff had until April 30, 2010 to conduct a short sale.  It is unclear what communications occurred between the parties concerning this program prior to the trustee sale.

In the present case, Plaintiff Rafael Valtierra (represented by counsel) filed suit against Wells Fargo on April 13, 2010 in Stanislaus County Superior Court.  Wells Fargo removed the case to federal district court based on diversity jurisdiction on May 14, 2010.  The present complaint is the First Amended Complaint ("FAC") which lists seven causes of action: 1) general violations of Cal. Bus. & Prof. Code §17200, 2) fraud by representing that Plaintiff had until April 30, 2010 to conduct a short sale, 3) to set aside a trustee's deed, 4) wrongful foreclosure, 5) violation of the Truth In Lending Act ("TILA"), 6) fraud by initially overestimating the value of the property, and 7) violation of Cal Bus. & Prof. Code §17200 by initially overestimating the value of the property.  Doc. 10.  Wells Fargo has filed a motion to dismiss for failure to state a claim and a motion to strike. Docs. 12 and 13.  Plaintiff has filed an opposition. Doc. 17.  The matter was taken under submission without oral argument.

In a separate but related matter, Wells Fargo filed a suit against Rafael and Ofelia Valtierra on April 2, 2010 in Stanislaus County Superior Court for unlawful detainer of the property.  The Stanislaus County Superior Court granted summary judgment in favor of Wells Fargo on June 24, 2010.  Rafael and Ofelia Valtierra received an order to stay eviction

proceedings on July 14, 2010.  The Stanislaus County Sheriff evicted Rafael and Ofelia Valtierra on August 17, 2010.  Rafael Valtierra filed a notice of removal on August 11, 2010.  However, no notice of removal was filed in federal district court.  Instead, Rafael and Ofelia Valtierra (proceeding pro se) filed a new complaint in federal district court (Civ. Case. No. 10-1455) against Wells Fargo and Cal-Western, claiming violations of the Fair Debt Collection Practices Act and Fair Credit Reporting Act, alleging they reported erroneous information to credit reporting agencies.  Wells Fargo has filed a motion to dismiss in that case.  It does not appear that Cal-Western has been served with a summons in that case.

**II. Legal Standards**

Under Federal Rule of Civil Procedure 12(b)(6)**,** a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted."  A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)....a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007), citations omitted.  "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not shown that the pleader is entitled to relief." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009), citations omitted.  The court is not required "to accept as true allegations that are merely

1   conclusory, unwarranted deductions of fact, or unreasonable inferences." <u>Sprewell v. Golden</u>

2   <u>State Warriors</u>, 266 F.3d 979, 988 (9th Cir. 2001).  The court must also assume that "general

3   allegations embrace those specific facts that are necessary to support the claim." <u>Lujan v. Nat'l</u>

4   <u>Wildlife Fed'n</u>, 497 U.S. 871, 889 (1990), citing <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957),

5   overruled on other grounds at 127 S. Ct. 1955, 1969.  Thus, the determinative question is

6   whether there is any set of "facts that could be proved consistent with the allegations of the

7   complaint" that would entitle plaintiff to some relief. <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S.

8   506, 514 (2002).  At the other bound, courts will not assume that plaintiffs "can prove facts

9   which [they have] not alleged, or that the defendants have violated...laws in ways that have not

10  been alleged." <u>Associated General Contractors of California, Inc. v. California State Council of</u>

11  <u>Carpenters</u>, 459 U.S. 519, 526 (1983).

12          In deciding whether to dismiss a claim under Fed. Rule Civ. Proc. 12(b)(6), the Court is

13  generally limited to reviewing only the complaint.  "There are, however, two exceptions....First, a

14  court may consider material which is properly submitted as part of the complaint on a motion to

15  dismiss...If the documents are not physically attached to the complaint, they may be considered if

16  the documents' authenticity is not contested and the plaintiff's complaint necessarily relies on

17  them. Second, under Fed. Rule Evid. 201, a court may take judicial notice of matters of public

18  record." <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 688-89 (9th Cir. 2001), citations omitted.

19  The Ninth Circuit later gave a separate definition of "the 'incorporation by reference' doctrine,

20  which permits us to take into account documents whose contents are alleged in a complaint and

21  whose authenticity no party questions, but which are not physically attached to the plaintiff's

22  pleading." <u>Knievel v. ESPN</u>, 393 F.3d 1068, 1076 (9th Cir. 2005), citations omitted.  "[A] court

23  may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in

24  opposition to a defendant's motion to dismiss. Facts raised for the first time in opposition papers

25  should be considered by the court in determining whether to grant leave to amend or to dismiss

26  the complaint with or without prejudice." <u>Broam v. Bogan</u>, 320 F.3d 1023, 1026 n.2 (9th Cir.

27  2003), citations omitted.

28          If a Fed. Rule Civ. Proc. 12(b)(6) motion to dismiss is granted, claims may be dismissed

with or without prejudice, and with or without leave to amend.  "[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc), quoting Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995).  In other words, leave to amend need not be granted when amendment would be futile. Gompper v. VISX, Inc., 298 F.3d 893, 898 (9th Cir. 2002).

### III. Discussion

**A. HOLA Preemption**

Wells Fargo argues that all claims are preempted by the federal Home Owners' Loan Act ("HOLA").  Federal savings associations, including federal savings banks, are regulated by the Office of Thrift Supervision ("OTS") and subject to HOLA, which broadly preempts large swathes of state law.  "Congress has legislated in the field of banking from the days of M'Culloch v. Maryland, creating an extensive federal statutory and regulatory scheme. Specific to this case, Congress enacted the Home Owners' Loan Act of 1933 to charter savings associations under federal law, at a time when record numbers of home loans were in default and a staggering number of state-chartered savings associations were insolvent. HOLA was designed to restore public confidence by creating a nationwide system of federal savings and loan associations to be centrally regulated according to nationwide best practices. We have described HOLA and its following agency regulations as a radical and comprehensive response to the inadequacies of the existing state system, and so pervasive as to leave no room for state regulatory control." Silvas v. E*Trade Mortg. Corp., 514 F.3d 1001, 1004 (9th Cir. 2008), citations and quotations omitted.  12 C.F.R. §560.2(a) states, "OTS hereby occupies the entire field of lending regulation for federal savings associations. OTS intends to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation."

The preliminary question is whether Wells Fargo has established it is an entity regulated by OTS and covered by HOLA.  Wells Fargo has submitted a number of documents which

support judicial notice of certain facts under Fed. Rule Evid. 201. See Doc. 14, Exs. A-D.  World

Savings, which changed its name to Wachovia Mortgage, FSB on December 31, 2007, was a

federal savings bank subject to HOLA. Doc. 14, Exs. A-C.  However, that entity converted itself

to a national bank and merged with Wells Fargo on November 1, 2009. Doc. 14, Ex. D.  Wells

Fargo has provided no support for the contention that the new merged entity is still covered by

HOLA.  Wells Fargo does not state that it is currently overseen by the OTS.  Case law on this

matter is mixed.  A number of cases apply HOLA without analyzing its applicability to Wells

Fargo or simply noting that a plaintiff does not challenge the issue. See <u>Giordano v. Wachovia</u>

<u>Mortgage, FSB</u>, 2010 U.S. Dist. LEXIS 136284 (N.D. Cal. Dec. 14, 2010); <u>Amaral v. Wachovia</u>

<u>Mortg. Corp.</u>, 692 F. Supp. 2d 1226, 1236 n.4 (E.D. Cal. 2010).  At least one case has questioned

whether HOLA preemption applies. See <u>Briosos v. Wells Fargo Bank</u>, 2010 U.S. Dist. LEXIS

134995, *39-40 n.11 (N.D. Cal. Dec. 18, 2010).

Other cases have looked to see whether the alleged violations took place when the

banking entity was covered by HOLA.  "Wells Fargo's acquisition of World Savings Bank, FSB

does not affect the HOLA preemption defense because the Complaint only addresses the

transaction between Plaintiffs and World Savings Bank, FSB. Moreover, Plaintiffs do not dispute

that at the time of the loan, World Savings Bank, FSB was a federally chartered savings

association, called a federal savings bank." <u>Taguinod v. World Sav. Bank, FSB</u>, 2010 U.S. Dist.

LEXIS 127677, *5 (C.D. Cal. Dec. 2, 2010).  "Plaintiff argues that HOLA does not apply to this

case because the only surviving Bank Defendant is Wells Fargo, a federally chartered bank not

subject HOLA. However, Plaintiff's loan originated with World Savings Bank, which was a

federal savings bank subject to HOLA and OTS regulations. World Savings Bank  later changed

its name to Wachovia Mortgage,  FSB, remaining under the regulatory authority of OTS and

subject to HOLA. Wachovia Mortgage is now a division of Wells Fargo. Thus, although Wells

Fargo  itself is not subject to HOLA and OTS regulations, this action is nonetheless governed by

HOLA because Plaintiff's loan originated with a federal savings bank and was therefore subject

to the requirements set forth in HOLA and OTS regulations." <u>Appling v. Wachovia Mortg., FSB</u>,

2010 U.S. Dist. LEXIS 97726, *18-19 (N.D. Cal. Sept. 17, 2010) (case dealing with alleged

1   violations at the time of refinancing).  This rule appears to be the best supported.

2        In this case, all occurrences surrounding the original procurement of the mortgage appears

3   to be covered by HOLA.  Causes of action arising on or after November 1, 2009 (date of

4   conversion to national bank) will not be preempted given the facts as they stand at this stage of

5   litigation.  Plaintiff alleges that Wells Fargo sent him a letter outlining a short sale program that

6   would have avoided foreclosure and then foreclosed in violation of the program's terms.  There

7   is no indication when the letter was sent and/or discussions about the short sale program took

8   place.  Thus, the court can not assume that these acts would be subject to HOLA preemption at

9   this point.

10

11  **B. Cal. Bus. & Prof. Code §17200 (Claims One and Seven)**

12        Plaintiff alleges, "Defendants have violated Business and Professions Code section

13  17200, et seq. by making untrue or misleading statements, or by causing untrue or misleading

14  statements to be made, with the intent to induce Plaintiff into not exercising his right to

15  redemption." Doc. 10, FAC, at 12:16-19.  Plaintiff clarifies that "An action based on this state

16  statute 'borrows' violations of other laws when committed pursuant to business activity. Here,

17  the Defendant's complete disregard of Making Home Affordable Directive 10-02 in conjunction

18  with the Defendant's fraudulent actions have resulted in the Plaintiffs' loss of his right of

19  redemption of his property and ultimately the loss of his property. Accordingly, by conducting an

20  illegal/fraudulent trustee sale, Defendants engaged in an unlawful and unfair business act which

21  constitutes Unfair Business Practices and a Violation of Business and Professions code 17200."

22  Doc. 17, Reply, at 5:22-6:3.  First, the Making Home Affordable Directive 10-02 was issued on

23  March 24, 2010 with an effective date of June 1, 2010. See

24  http://makinghomeaffordable.gov/pr_04152010.html.  The trustee sale took place on March 8,

25  2010.  Second, Plaintiff's claim refers to guidelines of the Home Affordable Modification

26  Program ("HAMP") portion of the overall Making Home Affordable Program.  However, there is

27  no private cause of action under HAMP. See Hart v. Countrywide Home Loans, Inc., 2010 U.S.

28  Dist. LEXIS 85272, *13-14 (E.D. Mich. Aug. 19, 2010); Zeller v. Aurora Loan Servs., LLC,

1  2010 U.S. Dist. LEXIS 80449, *2 (W.D. Va. Aug. 10, 2010); Hoffman v. Bank of Am., 2010

2  U.S. Dist. LEXIS 70455, *6 (N.D. Cal. June 30, 2010); Simon v. Bank of Am., 2010 U.S. Dist.

3  LEXIS 63480, *26-27 (D. Nev. June 23, 2010); Marks v. Bank of Am., 2010 U.S. Dist. LEXIS

4  61489, *13 (D. Ariz. June 22, 2010); De La Salle v. America's Wholesale Lender, 2010 U.S.

5  Dist. LEXIS 36319, *3-4 (E.D. Cal. Apr. 13, 2010);  Aleem v. Bank of Am., 2010 U.S. Dist.

6  LEXIS 11944, *12 (C.D. Cal. Feb. 9, 2010).  "A court may not allow plaintiff to plead around an

7  absolute bar to relief simply by recasting the cause of action as one for unfair competition."

8  Chabner v. United of Omaha Life Ins. Co., 225 F.3d 1042, 1048 (9th Cir. 2000).

9        Plaintiff also alleges, "Defendants' fraudulent acts, business model, and change of

10  underwriting standards were designed to create an environment of unfair business practices in

11  which Defendants could wrongfully profit. These actions included artificially raising the value of

12  the home in order to allow for a larger loan to maximize the Defendants profits." Doc. 10, FAC,

13  at 17:21-25.  The main gist of the general allegations are that Wells Fargo failed to provide

14  adequate disclosure of the terms of the mortgage and that Wells Fargo had a policy of directing

15  borrowers (including Plaintiff) towards unsuitable mortgages because those loans resulted in

16  greater fees. See Doc. 10, FAC, at 3:8-7:2.  These allegations deal with events surrounding the

17  original procurement of the mortgage, when World Savings was under the regulation of OTS.

18  "Under [12 C.F.R. §560.2(b)(9)], laws regulating disclosure 'including laws requiring specific

19  statements, information, or other content to be included in credit application forms, credit

20  solicitations, billing statements, credit contracts, or other credit-related documents and laws

21  requiring creditors to supply copies of credit reports to borrowers or applicants.' Plaintiff's

22  allegations would use section 17200 to require a federal savings association make particular

23  disclosures and apply specific standards to their loan application and disclosure documents.

24  There can simply be no question that this sort of claim utilizes state law to effectively regulate a

25  federal savings association in a way specifically preempted by section 560.2(b)(9)." Camacho v.

26  Wachovia Mortgage, FSB, 2009 U.S. Dist. LEXIS 102243, *11 (S.D. Cal. Nov. 3, 2009).

27  Another opinion dealt with allegations of a scheme to inflate "'commissions, kick-backs, and

28  undisclosed profits.' These allegations implicate loan-related fees within the meaning of 12

1  C.F.R. §560.2(b). Therefore, these claims are preempted by HOLA." <u>Taguinod v. World Sav.</u>

2  <u>Bank, FSB</u>, 2010 U.S. Dist. LEXIS 127677, *9 (C.D. Cal. Dec. 2, 2010), citations omitted.

3       Plaintiff's allegations fail to state a Cal. Bus. & Prof. Code §17200 cause of action.

4  Leave to amend is granted.

5

6  **C. Fraud (Claims Two and Six)**

7       Plaintiff alleges, "In order to induce the Plaintiffs, the Defendants made a series of

8  fraudulent promises. These promises include but are not limited to representations that the

9  Plaintiff had until April 30, 2010 to enter into a short sale program prior to the occurrence of a

10  trustee sale." Doc. 10, FAC, at 13:6-9.  In key part, the letter appended to the FAC states, "There

11  is still time for you to avoid a foreclosure sale and take advantage of an alternative you may not

12  have considered - a Short Sale....Hurry - to take advantage of this Short Sale seller incentive, the

13  closing must take place by April 30, 2010." Doc. 10, at 20.  Under California law, the "elements

14  of fraud are: (1) a misrepresentation (false representation, concealment, or nondisclosure); (2)

15  knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable

16  reliance; and (5) resulting damage." <u>Robinson Helicopter Co., Inc. v. Dana Corp.</u>, 34 Cal.4th

17  979, 990 (2004).  Fed. Rule Civ. Proc. 9(b) requires that when averments of fraud are made, the

18  circumstances constituting the alleged fraud must be "specific enough to give defendants notice

19  of the particular misconduct...so that they can defend against the charge and not just deny that

20  they have done anything wrong."  Though the substantive elements of fraud are set by a state law,

21  those elements must be pled in accordance with the requirements of Fed. Rule Civ. Proc. 9(b).

22  See <u>Vess v. Ciba-Geigy Corp. USA</u>, 317 F.3d 1097, 1103 (9th Cir. 2003).  Allegations of fraud

23  should specifically include "an account of the time, place, and specific content of the false

24  representations as well as the identities of the parties to the misrepresentations." <u>Swartz v.</u>

25  <u>KPMG LLP</u>, 476 F.3d 756, 764 (9th Cir. 2007).  "The plaintiff must set forth what is false or

26  misleading about a statement, and why it is false." <u>Vess v. Ciba-Geigy Corp. USA</u>, 317 F.3d

27  1097, 1106 (9th Cir. 2003).  Stated differently, the complaint must identify "the who, what,

28  when, where, and how" of the fraud. <u>Kearns v. Ford Motor Co.</u>, 567 F.3d 1120, 1124 (9th Cir.

1   2009).  The offer of a short sale may be enough to support a fraud claim.  However, the

2   circumstances of fraud are not sufficiently specific.  Additionally, the allegations do not support

3   all the elements of a fraud claim. For instance, the FAC does not state how Plaintiff relied upon

4   and was harmed by the alleged misrepresentation.

5         Plaintiff's other fraud allegation is that, "Defendants represented to Plaintiff that all the

6   statements made to him in the origination of the [mortgage] were true and that the value of the

7   Subject Property which supported the loan was also true.....Defendants represented themselves as

8   loan experts and represented their employees or third parties such as the appraisers as experts in

9   the field." Doc. 10, FAC, at 16:19-22 and 17:3-4.  Again, this claim deals with circumstances

10   surrounding the original procurement of the mortgage.  The Ninth Circuit has cited approvingly

11   of the OTS guidance on preemption: "When analyzing the status of state laws under § 560.2, the

12   first step will be to determine whether the type of law in question is listed in paragraph (b). If so,

13   the analysis will end there; the law is preempted. If the law is not covered by paragraph (b), the

14   next question is whether the law affects lending. If it does, then, in accordance with paragraph

15   (a), the presumption arises that the law is preempted. This presumption can be reversed only if

16   the law can clearly be shown to fit within the confines of paragraph (c). For these purposes,

17   paragraph (c) is intended to be interpreted narrowly. Any doubt should be resolved in favor of

18   preemption." <u>Silvas v. E*Trade Mortg. Corp.</u>, 514 F.3d 1001, 1005 (9th Cir. 2008), quoting

19   OTS, Final Rule, 61 Fed. Reg. 50951, 50966-67 (Sept. 30, 1996).  "Even state laws of general

20   applicability, such as tort, contract, and real property laws, are preempted if their enforcement

21   would impact thrifts in areas listed in § 560.2(b). Alternatively, such laws are preempted if they

22   have more than an incidental effect on the lending operations of a federal savings association."

23   <u>Rivera v. Wachovia Bank</u>, 2009 U.S. Dist. LEXIS 68391, *6-7 (S.D. Cal. Aug. 4, 2009),

24   citations omitted.  Specifically listed in 12 C.F.R. 560.2(b) is the statement that HOLA

25   preemption, "include[s], without limitation, state laws purporting to impose requirements

26   regarding:...(3) Loan-to-value ratios." 12 C.F.R. 560.2(b).  Thus, Plaintiff's claim that Wells

27   Fargo misrepresented the value of the house to increase the size of the loan appears to be covered

28   under 12 C.F.R. 560.2(b).  Language identical to that contained in the FAC has been determined

1   by another district court to "fall squarely within the preempted 'disclosure and advertising'

2   categories of 12 C.F.R. § 560.2(b)(9)." <u>Khan v. World Sav. Bank, FSB</u>, 2011 U.S. Dist. LEXIS

3   2442, *15 (N.D. Cal. Jan. 11, 2011).

4          Plaintiff's allegations fail to state a fraud cause of action.  Leave to amend is granted.

6   **D. Wrongful Foreclosure and Setting Aside Trustee's Sale (Claims Three and Four)**

7          Plaintiff alleges, "Defendants conducted an irregular and premature non-judicial

8   foreclosure sale, depriving Plaintiffs of their rights to redemption. Specifically, Defendants

9   fraudulently represented to the Plaintiff that the Plaintiff had until April 30, 2010 to enter into a

10  short sale program prior to the occurrence of a trustee sale." Doc. 10, FAC, at 14:6-10.  "Civil

11  Code sections 2924 through 2924k provide a comprehensive framework for the regulation of a

12  nonjudicial foreclosure sale pursuant to a power of sale contained in a deed of trust." <u>Moeller v.

13  Lien</u>, 25 Cal. App. 4th 822, 830 (Cal. App. 2d Dist. 1994).  "[T]rust deed nonjudicial foreclosure

14  sales are comprehensively regulated by the detailed statutory scheme set forth in section 2924 et

15  seq., which is not based on common law contract principles. We therefore decline...to base our

16  decision on common law contract principles of voidness and its corollaries of voidability,

17  enforceability, invalidity and illegality." <u>Residential Capital v. Cal-Western Reconveyance Corp.</u>,

18  108 Cal. App. 4th 807, 821 (Cal. App. 4th Dist. 2003).  Pointedly, Plaintiff does not allege that

19  Wells Fargo failed to comply with the requirements for non-judicial foreclosure under Cal. Civ.

20  Code §§2924-2924k.  He appears to argue that notwithstanding compliance, Wells Fargo's

21  failure to follow the directives of HAMP and failure to allow him a short sale entitles him to set

22  aside the foreclosure. See Doc. 17, Opposition, at 3:3-4:4.  These allegations fail to state a

23  wrongful foreclosure cause of action.  The cases Plaintiff cites deal with situations where a party

24  conducted foreclosures without meeting the Cal. Civ. Code §§2924-2924k requirements. See

25  <u>Munger v. Moore</u>, 11 Cal. App. 3d 1, 8 (Cal. App. 1st Dist. 1970) ("Pursuant to Civil Code

26  section 2924c, such successor has the statutory right to cure a default of the obligation secured by

27  a deed of trust or mortgage within the time therein prescribed. Plaintiff, therefore, as Reichert's

28  successor in interest in the trust property was entitled to tender the amount due to cure any

1   default in the obligation to defendant and to institute the instant action for damages for the illegal

2   sale which resulted from the failure to accept the timely tender"); Miller v. Cote, 127 Cal. App.

3   3d 888, 894 (Cal. App. 4th Dist. 1982) ("The procedure for foreclosing on security by a trustee's

4   sale pursuant to a deed of trust is set forth in Civil Code section 2924 et seq. The statutory

5   requirements must be strictly complied with, and a trustee's sale based on a statutorily deficient

6   notice of default is invalid").

7       Wells Fargo further argues that this equitable claim is barred by the lack of an offer to

8   tender the outstanding debt.  "It is settled that an action to set aside a trustee's sale for

9   irregularities in sale notice or procedure should be accompanied by an offer to pay the full

10  amount of the debt for which the property was security. This rule is premised upon the equitable

11  maxim that a court of equity will not order that a useless act be performed." Arnolds

12  Management Corp. v. Eischen, 158 Cal. App. 3d 575, 578-79 (Cal. App. 2d Dist. 1984).  "Under

13  California law, the 'tender rule' requires that as a precondition to challenging a foreclosure sale,

14  or any cause of action implicitly integrated to the sale, the borrower must make a valid and viable

15  tender of payment of the secured debt." Montoya v. Countrywide Bank, 2009 U.S. Dist. LEXIS

16  53920, *32 (N.D. Cal. June 25, 2009), citations omitted.  However, "tender may not be required

17  where it would be inequitable to do so." Onofrio v. Rice, 55 Cal. App. 4th 413, 424 (1997).

18  "The essential requisites of tender are: (1) An unconditional offer to perform, coupled with a

19  manifested ability to carry out the offer; (2) A production of the subject matter of the contract; (3)

20  The property tendered must not be less than what is due; and (4) If greater, there must be no

21  demand for a return of the excess." Guy F. Atkinson Co. of Cal. and Subsidiaries v. C.I.R., 814

22  F.2d 1388, 1393 (9th Cir. 1987).  Plaintiff has not offered to tender, instead relying on the court's

23  discretion to waive the tender requirement to accommodate the equities of a situation. Doc. 17,

24  Opposition, at 4:17-21.  Plaintiff has not articulated what equitable circumstances exist that

25  would justify setting aside the tender requirement.  Given the recent collapse in real estate prices,

26  there are no monetary damages available. See Munger v. Moore, 11 Cal. App. 3d 1, 11 (Cal.

27  App. 1st Dist. 1970) ("where a mortgagee or trustee makes an unauthorized sale under a power of

28  sale he and his principal are liable to the mortgagor for the value of the property at the time of the

sale in excess of the mortgages and liens against said property").  Plaintiff seeks to set aside the trustee sale and cancellation of the trustee's deed in order to recover the property.  To achieve that end, tender of the outstanding mortgage amount would be the equitable solution.

Plaintiff's allegations fail to state a wrongful foreclosure cause of action.  Leave to amend is granted.

**E. Truth in Lending Act (Claim Five)**

Plaintiff alleges,

Defendants have violated and ignored Section 226 of the Truth in Lending Act (also commonly referred to as Regulation Z and 12 CFR Section 226). Defendants failed to examine Plaintiff's current and expected 'Repayment ability' and failed to clearly and conspicuously disclose Plaintiffs key provisions of Plaintiff's mortgage, including but not limited to such details as the eventually reset interest rate, specific loan terms, and the total dollar amount the mortgage will cost over time....

From the loan documents the underwriter has apparently approved this loan based upon credit score and a belief that the property would continue to increase in value. No consideration of the ability of the borrower to repay this loan with a realistic means test appears to have been made. This is especially true when the adjustment of the interest rate is taken into account....Defendants knew or by the exercise of reasonable care should have known, that these Statements, acts or omissions were unlawful. Defendants actions stated herein are in violation of the Truth in Lending Act ...and have caused Plaintiff damage in an amount to be determined at trial.

Doc. 10, FAC, at 4:3-9 and 15:17-16:12.  "The purpose of the TILA is to ensure that users of consumer credit are informed as to the terms on which credit is offered them." Jones v. E*Trade Mortg. Corp., 397 F.3d 810, 812 (9th Cir. 2005).  TILA "requires creditors to provide borrowers with clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights." Beach v. Ocwen Fed. Bank, 523 U.S. 410, 412 (1998).

Plaintiff's allegations concern disclosure and acts that took place when the mortgage was initially procured.  Wells Fargo argues that any TILA claim is time barred. Doc, 12, Brief, at 13:21.  For monetary damages, TILA has a one year statute of limitation: "Any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation." 15 U.S.C.

§1640(e).  The limitations period runs from the date of consummation of the transaction, with "consummation" defined as "the time that a consumer becomes contractually obligated on a credit transaction." 12 C.F.R. §226.2(a)(13); <u>Grimes v. New Century Mortg. Corp.</u>, 340 F.3d 1007, 1009 (9th Cir. 2003).  In mortgage cases, "The failure to make the required disclosures occurred, if at all, at the time the loan documents were signed." <u>Meyer v. Ameriquest Mortg. Co.</u>, 342 F.3d 899, 902 (9th Cir. 2003).  The mortgage closed on June 21, 2006. Doc. 10, FAC, at 11:17-18.  Plaintiff did not file suit until April 1, 2010, well past the expiration of the one year limitations period.  Plaintiff has not argued that equitable tolling should apply.

Plaintiff's allegations fail to state a TILA cause of action.  Leave to amend is granted.


## IV. Order

Plaintiff's complaint is DISMISSED with leave to amend.  Plaintiff must file an amended complaint within thirty (30) days of the filing of this order.  Plaintiff is warned that as the new complaint will be a second amended complaint, continued failure to sufficiently allege claims may be grounds for dismissal with prejudice.


IT IS SO ORDERED.

Dated:    February 8, 2011           _____

CHIEF UNITED STATES DISTRICT JUDGE

14